## Martin Beck v. The People of the State of Illinois, ex rel. Carrie Etter.

1. ALIBI—*when evidence insufficient to establish.* Held, that the evidence in this case fell short of establishing an alibi.

2. CREDIBILITY OF WITNESSES—*when erroneous instruction upon, will not reverse.* Held, that an instruction which tells the jury when they may disregard the testimony of witnesses, but which omits the usual word "wilful" qualifying the word "sworn," though erroneous, will not reverse.

Bastardy proceeding. Error to the County Court of Fulton County; the Hon. W. SCOTT EDWARDS, Judge, presiding. Heard in this court at the November term, 1903. Affirmed. Opinion filed June 28, 1904.

O'HEARN & O'HEARN and HENRY M. WAGGONER, for plaintiff in error.

W. S. JEWELL, Assistant State's Attorney, and BUTCHER & WOOLLEY, for defendant in error.

MR. JUSTICE GEST delivered the opinion of the court.

This is a proceeding under the Bastardy Act, begun before a justice of the peace of Fulton county, upon the complaint of Carrie Etter, that she had been delivered of a bastard child, and that Martin Beck was its father. Upon the hearing before the justice of the peace, Beck was required to give bail to appear before the County Court to answer the complaint. A trial by jury was had in the County Court, Beck was found guilty, and adjudged to pay for the support of the child, and give a bond therefor, as required by the statute, and thereupon he brings the case to this court.

It is claimed by the People that sexual intercourse took place between the complaining witness, Carrie Etter, and Beck on May 19, 1901, and again about three weeks after that date, behind a strawstack upon the farm of Philip Etter, father of Carrie. On May 19, 1901, Carrie Etter was twelve years and three months old, and, as near as we can determine from this record, Martin Beck then was from six-

teen to eighteen years of age. It is urged by the plaintiff in error that the court erred in its instructions given on behalf of the People; that the verdict is against the evidence, and that improper evidence was admitted on the part of the People. It appears from the record that the case was tried in the County Court three times, but what verdicts. if any, were rendered on the first and second trials does not appear. The proof on the part of the People, of the actual fact of intercourse between complaining witness and defendant Beck, rests upon the testimony of Carrie Etter and her brother Harry. Carrie testifies that on a Sunday afternoon, May 19, 1901, her four brothers and the defendant and herself were playing "hide and seek" about the barn and strawstack upon her father's farm; that she had hidden behind the strawstack: defendant came where she was sitting, pushed her over and had intercourse with her; that at a subsequent time, about three weeks afterwards, he had intercourse with her at the same place under the same circumstances. Her brother Harry, who was then fourteen years old, states that he was seeking the others engaged in the game, and came behind the strawstack and saw the defendant in the act of intercourse with his sister, on the first occasion. Defendant denies that he ever had intercourse with Carrie Etter. A child was born of Carrie, February 26, 1902. A number of witnesses, being for the most part his relatives, testified on behalf of the defendant, the object of whose testimony was to prove that he was not at the farm of Philip Etter on Sunday, May 19, or on Sunday, June 9.

We have carefully read the entire bill of exceptions, and are not able to say that the jury were mistaken if they found that an alibi on the days mentioned had not been shown. As is very common in the proof on that question, there were many gaps in the testimony of the witnesses. The Etter and Beck families lived in the same neighborhood and not so far apart but that a few minutes would suffice to pass from one farm to the other. But the chief difficulty with the proof as to an alibi is that the People were not bound to prove any particular day or days when intercourse

was had. The People were not absolutely limited to May 19 and June 9. Yet all the proof of alibi on the part of defendant was limited to those two dates. Defendant's witnesses on cross-examination were unable to state where defendant was on any other days before or after said dates. In Holcomb v. The People, 79 Ill. 415, which was a bastardy case, the court say: "It is urged that the court erred in giving instructions for the People—that the third was erroneous. It states that, if the jury believe that the prosecuting witness was mistaken as to the day, but if they believed, from the evidence, that the defendant is the father of the child, they should find the defendant guilty. The day is no more material in this class of cases than in any other. The question is, whether appellant is the father of the child, and it matters not whether he became so on one day or another. Shall it be said that, in all other cases, criminal and civil, the precise day is not material, and that it shall be in this? Shall we hold that public policy requires that the law shall be so strictly construed and so rigidly administered that fathers of bastard children shall escape supporting their illegitimate offspring, and that the community shall be burdened therewith? Neither public policy, reason nor justice requires it, nor does precedent sanction it."

Counsel for the defendant recognized the law to be as above stated by offering the following instruction, which was given :

" The jury are further instructed that while the precise day on which sexual intercourse took place, resulting in pregnancy and the birth of a child, in a case of this kind, is not material, yet in this case, if the jury believe that the complaining witness testified falsely that the defendant had sexual intercourse with her on Sunday, May 19, 1901, the jury have a right to take that fact, if such is the fact, into consideration as affecting her credibility in determining whether or not the defendant is the father of the child in question."

Defendant denied the acts of sexual intercourse. The complaining witness and her brother Harry both affirm it.

We find nothing in this record to impeach the testimony of Harry, and while the testimony of Carrie might have been more definite, clear and positive, yet to our minds its force would not have been increased thereby, but rather lessened. She had been a witness before the examining magistrate and twice had been examined and cross-examined in the County Court in the presence of judge and jury and a crowd of witnesses and spectators. She was herself but a child at her last examination, though a mother; there was on all those occasions everything to confuse, embarrass and shame her. It appears that on several occasions, under vigorous cross-examination, she hung her head and made no reply until repeatedly urged. There is nothing strange in that. So far as the record shows she had always been a modest, quiet, well-behaved child. She is not charged with being rude, coarse or unduly familiar with persons of the male sex. The defendant was several years her senior. His counsel describe him as a man. We see naught in this record to impeach the character of either Carrie or Harry Etter. Their testimony was entirely sufficient on which to base this verdict and doubtless was the proof on which it was found. If the court erred in permitting witnesses for the People to contradict some testimony of defendant and his mother on an immaterial matter, as is said by counsel, the error was not at all sufficient to justify a reversal of this judgment. We think some of the contradictions were proper and some improper, but if all were improper, they would not constitute reversible error.

One instruction given on the part of the plaintiff stated that if the jury believed that any witness had sworn falsely to any fact or facts material to the issue, they had the right to disregard all the testimony of such witness except as corroborated. An instruction given on the part of defendant was in the same language except that it contained the word " wilfully " before the word " sworn." The plaintiff's instruction was incorrect and the defendant's was correct. Instructions five, six and eight on the part of the People were upon the question of alibi; of these No. 5

was the strongest in its terms, more subject to the criticism made by counsel than either the sixth or eighth, yet the fifth was in its precise terms approved in Miller v. People, 39 Ill. 464, and again in Creed v. The People, 81 Ill. 568. No complaint is made of instructions refused or modified that were asked by defendant. All that he asks were given as asked. It was error to give the instruction relative to effect of false swearing without the use of the word " wilfully " but it was not such error as to justify the reversal of the judgment. We see no valid objection to instructions four and seven. The defendant has been given a fair trial; the jury found him guilty; the trial court deemed the verdict just and we coincide with that court.

*Affirmed.*